Mary MAY, Plaintiff,

v.

**EVANSVILLE-VANDERBURGH SCHOOL CORPORATION; Lonnie Freeman, Albert J. Umbach, Jr., Martha Schmadel, Suzanne Aiken, and Elaine Amerson, individually and in their official capacities as members of the Board of Education; and Victor L. Fisher, Jr., individually and in his official capacity as Superintendent, Defendants.**

No. EV 84–165–C.

United States District Court,
S.D. Indiana,
Evansville Division.

June 27, 1985.

Terry Noffsinger, Noffsinger & Deig, Evansville, Ind., Thomas Stephen Neuberger, Wilmington, Del., John W. Whitehead, Manassas, Va., for plaintiff.

Jeffrey R. Frank, Evansville, Ind., Ron A. Hobgood, Robert Musgrave, Kightlinger Young Gray & DeTrude, Evansville, Ind., for defendants.

## MEMORANDUM DECISION

BROOKS, District Judge.

This matter comes before the Court upon cross motions for summary judgment filed by the parties to this action. The motions address the basic issue on the merits of this case, *i.e.*, whether the United States Constitution permits a school board to prohibit so-called prayer meetings conducted by school employees on school property. This Court has jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343.

## FACTUAL SUMMARY

There is little dispute about the facts surrounding the meetings which transpired and which are at issue in this case. The plaintiff, Mary May, is a teacher's aide employed by the Evansville-Vanderburgh School Corporation ("EVSC"). She has been so employed for approximately six (6) years. During the 1981–82 school year, Mrs. May and other EVSC employees, either full-time teachers or teachers' aides, met on Tuesday mornings at Harper School for prayer, religious devotions, and religious speech. All of the participants worked at Harper School, an elementary school operated by the EVSC. The meetings were conducted weekly from 7:25 until 7:45 a.m., all occurring before teachers were to report to duty stations in the school. The meetings were voluntary. All participants were adults. No students attended the meetings. The meetings continued for some period of time, not altogether clear from the record, until early in the 1983–84 school year. No school corporation administrators were aware of the meetings until that time.

In September, 1983, Kenneth Wempe became the new principal at Harper School and instituted a practice of publishing a daily school newsletter. Mrs. May approached Mr. Wempe and inquired if the newsletter might include notice of the weekly prayer meetings. As Mrs. May testified in her deposition:

> Well, he has a daily newsletter that goes out every day, and I wrote a little voluntary invitation to invite anyone that would like to to (sic) come to the prayer and religious meetings at that time and gave it to him.

(May deposition, Q. 161, p. 23).

Shortly thereafter, Mrs. May was advised by Mr. Wempe, who had consulted with school corporation administrators, that the meetings should stop because they violated school board policy. Although no written policy is evident, it appears from the record that the school board and the superintendent of schools had consistently applied a policy prohibiting use of school facilities for religious activity. At all times pertinent to this complaint, no religious meetings occurred on school property, at least to the knowledge of school administrators, and no meetings of teachers occurred at Harper School except for those necessary to the operation and management of the school.

There is no evidence that Mrs. May's meetings were disruptive to the school environment. Obviously, the meetings continued for a lengthy period of time undiscovered by school officials.

After being told that further meetings would not be permitted, Mrs. May and her group met in a car on the school parking lot at the appointed time.

In her complaint, Mrs. May alleges five constitutional rights were violated by the defendants' action: free speech, free association, equal protection, equal protection in a public forum, and free exercise of religion.

## I

The Court first determines whether Harper School is a public forum, whether the defendants have made Harper School a public forum, or whether the defendants have made Harper School a limited public forum.

■ The First Amendment "does not guarantee access to property simply because it is owned or controlled by the government." *United States Postal Service v. Council of Greenburgh Civic Assns.*, 453 U.S. 114, 129, 101 S.Ct. 2676, 2685, 69 L.Ed.2d 517 (1981). The Supreme Court has not "suggested that students, teachers or anyone else has an absolute constitutional right to use all parts of a school building or its immediate environs for ... unlimited expressive purposes." *Grayned v. City of Rockford*, 408 U.S. 104, 117–18, 92 S.Ct. 2294, 2304, 33 L.Ed.2d 222 (1972).

■ A public school does not become a public forum simply by its existence. A school system is justified and is on firm constitutional ground in refusing to allow

the use of school facilities as a public forum. *Seyfried v. Walton*, 668 F.2d 214 (3rd Cir.1981); *Brandon v. Board of Education*, 635 F.2d 971, 980 (2nd Cir.1980), *cert. denied*, 454 U.S. 1123, 102 S.Ct. 970, 71 L.Ed.2d 109 (1981). "In addition to time, place, and manner regulations, the State may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Perry Education Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 46, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983) citing *Greenburgh, supra*, 453 U.S. at 131, n. 7, 101 S.Ct. at 2686, n. 7.

■ The Court finds in this case that Harper School is not a public forum in the inherent or traditional senses. Examples of such public forums would be streets, sidewalks, or parks. See, *Martin v. Struthers*, 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943); *Hague v. C.I.O.*, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939).

■ While a public forum may be "created" by the governmental entity, that 'creation" requires some deliberate uses as a place for exchange of views. *Perry, supra*, see also, *Widmar v. Vincent*, 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981). Because public ownership does not guarantee public access, the Court must inquire whether the defendants have deliberately created a public forum at Harper School. It is clear on this record that no such public forum has been created by the defendants. A policy prohibiting religious meetings or activity on school grounds, including Harper, is evident, even if the policy is not written. Consistent application of such a policy amounts to a refusal to create such a forum. Plaintiff attaches significance to an incident several years ago in which a church was permitted to use a neighborhood school for services after a fire destroyed the church building. The Court considers this instance entirely unique and isolated, and it does not represent an intent by the defendants to make school buildings public forums. The plaintiff also argues that the recent adoption of the Equal Access Act by the EVSC makes school buildings public forums. While that Act was adopted *after* this case was commenced, the evidence is clear that the Act applies to student, rather than teacher groups; that the Act is directed to secondary, rather than elementary schools; and that there is no reference whatever to groups organized by or involving only teachers or school employees. The Court is unpersuaded that the School Board's adoption of that Act as policy is sufficient to create a public forum.

■ Neither can the Court conclude that even a limited public forum has been created or permitted to exist. The plaintiff argues that teachers discuss a variety of topics prior to the school day, and that the defendants seek only to exclude religious speech by their actions in Mrs. May's case. There is simply no evidence that teachers can discuss *anything*, and the examples noted by the plaintiff involve the kinds of informal, isolated conversations which occur in any workplace. There is no evidence that teachers met at Harper School, or in any other EVSC school, in a consistent, formal, patterned way other than to conduct business necessary to the operation and administration of the school. Mrs. May's meetings are distinct. They do not represent happenstance conversation or informal meeting; rather, they are formal, organized meetings conducted for the sole purpose of engaging in religious speech and worship. Plaintiff has not, and apparently cannot, point the Court to *any* other similarly formal meetings in the school involving teachers which do not pertain to school business. If other teacher groups were permitted to meet on a variety of religious and non-religious subjects in the kind of formalized way Mrs. May's group met, there might be an argument that a public forum, or at least a limited public forum, existed in this case and that the exclusion of Mrs. May's group was some denial of constitutional rights. The record reveals no such scenario.

The Court concludes that no public forum existed in the instant case. As such, there is no violation of the plaintiff's free speech rights.

## II

The Court now examines whether the defendants' policy is supported by analysis under the Establishment Clause. Defendants' success on this issue would justify any other alleged infringement of the plaintiff's constitutional rights on grounds of a compelling state interest.

■ The First Amendment states, in pertinent part, "Congress shall make no law respecting an establishment of religion...." This clause has been interpreted to prohibit three identified "evils"— "sponsorship, financial support, and active involvement of the sovereign in religious activity." *Walz v. Tax Commission*, 397 U.S. 664, 668, 90 S.Ct. 1409, 1411, 25 L.Ed.2d 697 (1970). Thus, the government is restrained from entanglement with religious speech or activity. This is true although "judicial caveats against entanglement must recognize that the line of separation, far from being a 'wall,' is a blurred, indistinct, and variable barrier depending on all circumstances of a particular relationship." *Lemon v. Kurtzman*, 403 U.S. 602, 614, 91 S.Ct. 2105, 2112, 29 L.Ed.2d 745 (1971). The First Amendment does not forbid the mention of religion, only the advancement or inhibition thereof by the government. *Florey v. Sioux Falls School Dist. 49–5*, 619 F.2d 1311 (8th Cir.1980), *cert. denied*, 449 U.S. 987, 101 S.Ct. 409, 66 L.Ed.2d 251 (1980).

The appropriate test by which to measure the School Board's policy in the instant case is stated in *Lemon, supra*, 403 U.S. at 612–13, 91 S.Ct. at 2111:

First, the statute (or policy[1]) must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion, (cite omitted); finally, the statute must not foster 'an excessive government entanglement with religion' (cite omitted).

The parties agree that this so-called Lemon "tripartite" test is appropriate to apply to the instant case.

■ The Court concludes that the School Board policy in question is supported by a secular purpose, *i.e.*, a neutral position which seeks neither to support nor inhibit religious practice or activity. The Court already has concluded the evidence in this case does not support a finding of either a public forum or limited public forum at Harper School. It would appear the defendants have the legal authority to operate their school, within state and federal law, toward whatever ends achieve the traditional function of a school.

The Court further concludes that the School Board policy in question does not have as its primary effect the advancement of religious belief or practice. Obviously, the impact of the policy serves contrary ends. The defendants further argue that plaintiff's success in this case would put them in the untenable and unconstitutional position of advancing belief over non-belief. The plaintiff correctly argues that whatever benefits accrue to her and fellow participants may well fall into the *de minimis* range when economic benefit is considered. There is, however, some question of an imprimatur of state approval for religious belief were the School Board required to alter its policy to conform to plaintiff's demands. Such an impression of government approval for religious activity is forbidden under the Establishment Clause. *Everson v. Board of Education*, 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947). In the instant case, there is no evidence that students were aware of the ongoing prayer meetings or were unfairly exposed to religious speech by Mrs. May or other meeting participants. There is, however, an indication that Mrs. May sought to expand her group by advertisement in the school's daily newsletter. The group was not discovered until it moved toward more public and wider exposure of its activities. In the

1. See, *Widmar v. Vincent*, 454 U.S. 263, 271, 102   S.Ct. 269, 275, 70 L.Ed.2d 440 (1981).

peculiarly sensitive atmosphere of an elementary school, there is a significant risk of creating an improper imprimatur of state approval for religious activity. The School Board's policy is intended to and succeeds in preventing such a question of impressionability.

The measure of the final part of the test, excessive entanglement, is whether the government is required to exercise "comprehensive, discriminating, and continuing" surveillance of the speech involved. *Lemon, supra,* 403 U.S. at 619, 101 S.Ct. at 2114. The plaintiff argues that a need for an adult monitor of the meetings is unnecessary. Such an adult monitor has been a sticking point in cases involving student groups using school property for religious meetings. See, *e.g., Bender v. Williamsport Area School District,* 741 F.2d 538 (3rd Cir.1984). The plaintiff's argument misses the point.

At issue in the instant case is how a public, government-operated school system is to administer its property and employees. Permitting Mrs. May's meetings would require some comprehensive and continuing supervision. The school is obligated to abide by the law, and any deviation from the adults-only organization of the prayer group would require immediate action. Even the plaintiff concedes involving students would violate the law. The impressionability problem is avoided on these facts, and the Court does not presume here facts which are not in the case. But there is little question that such meetings invite and require administrative vigilance to ascertain the degree and extent of employee involvement and to prevent any exposure of the meetings to students. The defendants have chosen to avoid such entanglement by forbidding such meetings on school property. That decision may disrupt what this plaintiff would prefer, but the law permits the defendants to make that decision. By neither creating a public forum nor establishing a policy in which religious speech or activity is permitted in the school, the defendants have spared themselves the challenge of surveillance and scrutiny the law would appear to require of

them. The policy without question avoids excessive entanglement as required in the *Lemon* test.

Accordingly, the Court finds that the defendants' policy under which they prohibited Mrs. May and her fellow teachers from conducting religious meetings on school property is constitutional. The defendants acted properly and within correct precepts of constitutional law.

## III

Having decided the pivotal issue in the defendants' favor with respect to the Establishment Clause defense, the Court need not engage in scrutiny of the other constitutional claims in the plaintiff's complaint. There exists a compelling state interest in the instant case which requires the defendants to follow the Establishment Clause. As such, that precept overrides Mrs. May's other alleged constitutional violations involving free association, equal protection, and free exercise of religion. *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). The state claims are dismissed because the Court lacks jurisdiction to hear them because the federal question issues have been resolved in the instant case against the plaintiff. In any event, it would appear the defendants' position in claiming the supremacy clause of the Constitution would render moot those claims is well taken. The finding against the plaintiff on the additional constitutional issues is consistent with *Brandon* and *Bender.*

The decision herein renders moot other pending motions for summary judgment and partial summary judgment. Because the Court will enter judgment consistent with this opinion for all defendants, consideration of those motions is unnecessary.

## IV

### CONCLUSION

In light of the foregoing, the Court finds that the plaintiff's claims must fail in their entirety. The defendants' motion for sum-

mary judgment is GRANTED. The plaintiff's motion for summary judgment is DENIED. The state claims are hereby DISMISSED. Judgment will be entered in accordance herewith and defendants awarded their costs of the action.

IT IS SO ORDERED.

### JUDGMENT ENTRY

This matter comes before the Court upon cross motions for summary judgment filed by the parties to this action. The Court, having considered the motions and the responses thereto, and having entered its findings GRANTING the defendants' motion and DENYING the plaintiff's motion in a memorandum decision on this date.

IT IS SO ORDERED and ADJUDGED

that the plaintiff take nothing by way of her complaint, that there are no genuine issues as to material facts as to the legal issues presented in the motions, that the state claims raised by the plaintiff in her complaint are DISMISSED, that the defendants are entitled to judgment on all counts of the complaint alleging violations of federal constitutional rights, and that judgment is hereby entered for the defendants on those counts. The case is hereby DISMISSED on the merits. Plaintiff will bear the costs of the action.